IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Carol Brown, | ) | C/A No.: 1:11-3245-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a
Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a)
(D.S.C.).  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to
obtain judicial review of the final decision of the Commissioner of Social Security
("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").  The two
issues before the court are whether the Commissioner's findings of fact are supported by
substantial evidence and whether he applied the proper legal standards.  For the reasons
that follow, the undersigned recommends that the Commissioner's decision be reversed
and remanded for further proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

        On April 10, 2008, Plaintiff filed an application for DIB in which she alleged her
disability began on August 10, 2007.  Tr. at 118–19.  Her application was denied initially
and upon reconsideration.  Tr. at 71, 74.  On August 13, 2009, Plaintiff had a hearing

before an Administrative Law Judge ("ALJ").  Tr. at 31–56 (Hr'g Tr.).  The ALJ issued an unfavorable decision on January 19, 2010, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 16–24.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–4.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on November 29, 2011.  [Entry #1].

      B.     Plaintiff's Background and Medical History

          1.     Background

Plaintiff was 52 years old at the time of the hearing.  Tr. at 36.  She completed high school.  Tr. at 36.  Her past relevant work ("PRW") was as a school bus driver.  Tr. at 150.  She alleges that her agoraphobia, degenerative disc disease, and spondylosis have interfered with her ability to work since 1977, but that she became unable to work on August 10, 2007, when she was let go from her job as a bus driver.  Tr. at 149.

          2.     Medical Evidence Before the ALJ[1]

              a.     Physical Impairments

Plaintiff's primary physician is Charles Wadee, M.D.  On July 26, 2006, Plaintiff presented to Dr. Wadee complaining of pain and inflammation in her joints.  Tr. at 266.  Dr. Wadee diagnosed osteoarthritis, depression, and neck pain.  *Id.*  In September 2006,

---

[1] Although Plaintiff submitted additional medical evidence to the Appeals Council, the parties have not summarized that evidence in their briefs and do not rely on it in support of their arguments.  Thus, the undersigned has not included that evidence in this Report.

she complained of neck pain, sinus problems, and dizziness. Dr. Wadee diagnosed sinusitis, depression, and gastroesophageal reflux disease ("GERD") and prescribed Zoloft. Tr. at 262. She continued to complain of a sore neck in November 2006. Tr. at 256. Later in November, Dr. Wadee ordered a lumbar (low back) MRI because Plaintiff complained of low back pain, lumbar radiculopathy, and bilateral leg pain. Tr. at 249. The MRI revealed moderate to severe degenerative disc disease at L2–3 with mild to moderate impingement of the thecal sac, but no appreciable neural impingement. *Id.*

In January 2007, Plaintiff called Dr. Wadee's office reporting a lot of back pain and requesting a refill of Prednisone (a prescription corticosteroid). Tr. at 247. On February 13, 2007, Dr. Wadee also requested a cervical (neck) MRI, which was normal. Tr. at 240. Plaintiff complained of joint pain on February 20, 2007. Tr. at 243. In March 2007, Dr. Wadee wrote a "To whom it may concern" letter opining that Plaintiff had stable degenerative disc disease and "[could] return to work without any restrictions." Tr. at 241.

Plaintiff continued to receive treatment from Dr. Wadee in 2007, 2008, and 2009. Although Dr. Wadee noted diagnoses of depression, post-traumatic stress disorder ("PTSD"), and panic attacks (*see, e.g.*, Tr. 237), Plaintiff complained primarily of sinus problems. Tr. at 237, 309, 311, 315, 410, 412. In June 2008, however, she reported a recent episode of back pain. Tr. at 360. She was diagnosed with neck and back pain, panic attacks, and depression. *Id.* On September 29, 2008, Plaintiff reported back pain and was diagnosed with mechanical back pain and radiculopathy. Tr. at 357. In May

3

2009, Plaintiff reported that she was "aching all over." Tr. at 412. Dr. Wadee repeatedly noted that Plaintiff had normal (NL) range of motion (ROM), gait, reflexes (DTR or deep tendon reflexes), and mental status and no neurological deficits. *See, e.g.*, Tr. at 309, 315, 360, 410, 412.

On May 5, 2008, Plaintiff completed a function report in which she stated that she is able to cook, bake, and go shopping. Tr. at 158–65. She indicated that she enjoys swimming and that she alternates cleaning and mopping the bathroom and kitchen each day. Tr. at 160, 162. She stated that she has trouble carrying her 18-pound grandchild. 163. She also stated that her back pain was worse when she was working, but had improved because she was limiting her activity. Tr. at 165.

In May 2008, Seham El-Ibiary, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; and sit, stand, or walk six hours in an eight-hour workday without any additional limitations. Tr. at 318–25. In December 2008, Frank Ferrell, M.D., also opined that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; and sit, stand, or walk six hours in an eight-hour workday. Tr. at 391–98. He also opined that Plaintiff could only occasionally climb ladders, ropes, and scaffolds. Tr. at 393.

In July 2009, Dr. Wadee completed a physical capacities evaluation. Tr. at 437–39. He opined that Plaintiff could sit and stand/walk one hour per day; would need the opportunity to alternate sitting and standing throughout the day; could perform no

pushing or pulling with her upper extremities; could never lift or carry anything or perform any postural activities, such as balancing, stooping, crouching, or crawling; and had to totally avoid heights, being around machinery, or marked changes in temperature and humidity. Tr. at 437–38. He found that Plaintiff could adequately use her hands for simple grasping, fine manipulation, and repetitive motion tasks and could use her feet for repetitive movements. Tr. at 437. Dr. Wadee stated that Plaintiff suffered from pain caused by spinal radiculopathy and spinal stenosis. Tr. at 439. He opined that her pain and/or side effects of her medication constituted a significant handicap to sustained attention and concentration precluding skilled work tasks. Tr. at 440.

b.    Mental Impairments

In February 2007, Plaintiff presented to Patrick Mullen, M.D., a psychiatrist, complaining of depression. Tr. at 281. She said she could not think clearly, and her judgment was "not good," and she had "quit her work and her romance [was] over." *Id.* Dr. Mullen increased her Zoloft dose and continued her on Xanax. *Id.*

In April 2007, she was doing "somewhat better" on the increased dose of Zoloft, but described herself as "scatterbrained" with difficulty focusing. *Id.* Dr. Mullen noted that her symptoms were consistent with severe attention deficit disorder ("ADD"). *Id.* In August, Dr. Mullen opined that Plaintiff was "unable to work—anxiety and panic make her intolerant of work." *Id.* He also completed an "attending physician's statement" stating that Plaintiff suffered from generalized anxiety disorder, panic disorder, and dysthymic disorder. Tr. at 314–15. He opined that although Plaintiff's condition had

5

improved since the onset of her symptoms, her job exacerbated her underlying, long-standing anxiety disorder and she would never be able to return to work. *Id.*

In February 2008, Dr. Mullen authored a psychiatric review note in connection with Plaintiff's long-term disability application. Tr. at 296–97. He noted that he had been seeing Plaintiff "at irregular intervals from January 30, 1997 until the present." Tr. at 296. Dr. Mullen reported that Plaintiff had problems with anxiety and panic attacks, and noted that she repeatedly complained of difficulty working. *Id.* He noted that Plaintiff was let go from her work because her boss noticed how anxious and unfocused she was on the job. *Id.* He opined that her mental limitations included the "inability to pay attention, difficulty getting along with the students she has to supervise on the job, having a hard time meeting deadlines and feelings of agoraphobia." Tr. at 297. He stated that Plaintiff took Xanax and Zoloft, but that they provided only partial relief. *Id.* He opined that he did not "believe she [was] a candidate for the active work force due to the level of panic and anxiety." *Id.*

In June 2008, Spurgeon Cole, Ph.D., examined Plaintiff in connection with her disability application. Tr. at 327–30. Plaintiff reported that she cooked, cleaned, did laundry, and went to the grocery store. Tr. at 328. "She indicates she enjoys going to Wal-Mart, which seems rather strange for [an] individual who was diagnosed with ag[o]raphobia." Tr. at 328–29. She handled her own finances, went out to eat with her daughter, and attended church regularly. Tr. at 329. On exam, her thought processes were logical and goal directed, and she had adequate concentration and focus, "although

6

. . . she is a little scatter brained at times." Tr. at 328. Dr. Cole opined that Plaintiff's anxiety and depression may be impacting her ability to think clearly at times. Tr. at 327. He further opined that Plaintiff "would need employment where she did not have to work directly with the public" and that was "not overly stressful." Tr. at 329. His diagnostic impression was that Plaintiff had adult ADD, a generalized anxiety disorder, depression, and a personality disorder. Tr. at 330.

In July 2008, state-agency consultant Craig Horn, Ph.D., reviewed Plaintiff's records and completed a mental residual functional capacity ("RFC") assessment and a psychiatric review technique ("PRT"). Tr. at 345–47; *see also* Tr. at 331–44. Dr. Horn noted Plaintiff's diagnosis of attention deficit hyperactivity disorder ("ADHD"), non-specific depression, generalized anxiety, and mixed personality disorder. Tr. at 332–38. He opined that Plaintiff was mildly restricted in activities of daily living ("ADLs"); moderately restricted in maintaining social functioning, concentration, persistence, and pace; and had no episodes of decompensation. Tr. at 341. While Dr. Horn determined that Plaintiff's psychiatric impairments were severe, he opined that they did not preclude her from performing simple, routine tasks away from the public. Tr. at 343. He opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions and in her ability to interact appropriately with the general public. Tr. at 345–46.

Plaintiff returned to Dr. Mullen in August 2008. Tr. at 408. She was worried about her son and daughter, and reported that her sister was on drugs. *Id.* Because

Xanax and Zoloft helped, Dr. Mullen continued her on Xanax, but decreased her Zoloft dosage as it made her "zombie-like." *Id.*

On November 24, 2008, state-agency consultant Dr. Robbie Ronin completed a PRT and found that Plaintiff had adult ADHD, depression, generalized anxiety disorder, and mixed personality disorder. Tr. at 373–85. He noted that Plaintiff had a history of diagnosed panic with agoraphobia, but that she enjoyed shopping at Wal-Mart. Tr. at 378. Dr. Ronin opined that Plaintiff was moderately restricted in ADLs and in maintaining social functioning, concentration, persistence, and pace, but had no episodes of decompensation. Tr. at 383. He further opined that Plaintiff had mild/moderate psychiatric impairments, but that the level of her impairments were not as pronounced as alleged and did not preclude her from performing simple, routine, repetitive tasks or interacting appropriately with co-workers or supervisors. Tr. at 385. He concurred with the functional limitations assigned by Dr. Horn, but also found that Plaintiff was moderately limited in her ability to set realistic goals or make plans independently of others. Tr. at 387–89.

In February 2009, Dr. Mullen noted that Plaintiff was still worried and anxious and, "with structured questionnaire[,] she reveals mood lability and instability." Tr. at 408. Dr. Mullen speculated she might have bipolar disorder in addition to her anxiety. *Id.*

That same day, Dr. Mullen opined that Plaintiff had depressive and bipolar syndromes, with possible manic syndrome. Tr. at 399. He opined that her mental

8

disorders resulted in moderate restrictions of ADLs; marked difficulties in maintaining social functioning; marked deficiencies in concentration, persistence, or pace; and three episodes of decompensation of extended duration. Tr. at 400. He then assessed factors related to the Listing requirements for affective disorders and anxiety-related disorders. Tr. at 401–03. He opined that Plaintiff was markedly limited in understanding, remembering, and carrying out detailed instructions; and was markedly or moderately limited in several areas of sustained concentration and persistence, social interaction, and adaptation. Tr. at 404–06. Specifically, Dr. Mullen found that Plaintiff was markedly limited in her ability to perform activities within a schedule; complete a normal workday and work week without interruptions from psychologically-based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. *Id.*

  C. The Administrative Proceedings

   1. The Administrative Hearing

    a. Plaintiff's Testimony

At the August 13, 2009 hearing, Plaintiff testified she lived with her son and last worked in August 2007 as a bus driver. Tr. at 36–37, 51–52. She testified that she was given the option of resigning or being fired, and was ultimately approved for disability retirement. Tr. at 37.

Plaintiff testified that Dr. Mullen prescribed her medications, which have helped her and gotten her "just okay." Tr. at 38. She alleged that her medication made her drowsy. Tr. at 39. According to Plaintiff, her memory was "not good" and her concentration was "awful." *Id.* She stated that she stayed depressed and that she had "been like this pretty much all [of her] life." *Id.* She described having trouble getting out the door and stated she was always late. Tr. at 38, 40.

She further testified that she had pain in her back and neck, but that she was able to ride in a car for an hour. Tr. at 41. Plaintiff testified that she took ibuprofen for her back, and, when the pain got really bad, she took Prednisone. Tr. at 44. She also stated that swimming helped her back and that she was "really trying to do it without taking a lot of drugs." *Id.* Plaintiff testified that she cooked, baked "a lot," did dishes and laundry, folded clothes, swept, mopped, vacuumed, took out the trash, cleaned the house, and could do some yard work, including planting flowers. Tr. 45–46. She also went to church weekly, liked to go to the store, and went out for dinner. Tr. at 47–49. She stated she would really like to start sewing, but did not have the money to do it. Tr. at 48. She said she enjoyed going on picnics with and reading to her grandchildren. Tr. at 49.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Carey Washington reviewed the record and testified at the hearing. Tr. at 50. The VE categorized Plaintiff's PRW as a school bus driver as medium work. Tr. at 52. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work, but was limited to occasional

10

climbing of ropes, ladders, and scaffolds; frequent climbing, balancing, stooping, kneeling, crouching, and crawling; simple one or two step tasks; a low-stress environment, including no contact with the public and a non-production type of job. *Id.* The VE testified that the hypothetical individual could not perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. Tr. at 53. The VE testified to occupations that matched the hypothetical: housekeeper (DOT 323.687-010), medium, unskilled (6,000–8,000 jobs in South Carolina; 175,000–200,000 jobs nationally); park worker (DOT 406.687-010), medium, SVP 2 (2,000–3,000 jobs in South Carolina; 50,000–75,000 jobs nationally); and kitchen helper (DOT 318.687-010), medium, unskilled (2,000–3,000 jobs in South Carolina; 100,000–125,000 jobs nationally). Tr. at 53–54.

The ALJ then described a second hypothetical individual with the same restrictions as the first, but who would frequently miss work and the frequency and duration of the absences would be at the sole discretion of the individual. Tr. at 54. The VE testified that this additional limitation would preclude any job in a competitive labor market. *Id.*

2.      The ALJ's Findings

In his January 19, 2010, decision, the ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

11

2.    The claimant has not engaged in substantial gainful activity since August 10, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: anxiety and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) lift 50 pounds occasionally 25 pounds frequently, sit six of eight hours, stand six of eight hours and walk six of eight hours except he [sic] can occasionally climb ropes, ladders and scaffolds; perform frequent balancing, stooping, kneeling, bending, and crawling; perform simple 1 to 2 step tasks; would require low stress work environment defined as avoiding any contact with public; and non-production type jobs.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on June 4, 1957 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 10, 2007 through the date of this decision (20 CFR 404.1520(g)).

Tr. at 18–24.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)      The ALJ improperly accorded little or no weight to the opinions of
        Plaintiff's treating physicians;

2)      The ALJ improperly assessed Plaintiff's credibility; and

3)      The ALJ failed to evaluate the combined effect of Plaintiff's multiple
        impairments.

The Commissioner counters that substantial evidence supports the ALJ's findings

and that the ALJ committed no legal error in his decision.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

"disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected to last for
at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series

of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983)

(discussing considerations and noting "need for efficiency" in considering disability

claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

      A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the

---

[2]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3]  In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

15

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     The ALJ Failed to Consider Plaintiff's Combined Impairments

Plaintiff argues that the ALJ failed to properly consider the combined effects of her physical and mental impairments.  [Entry #18 at 38–39].  The undersigned is constrained to agree.

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in

16

determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In this case, the ALJ specifically addressed Plaintiff's impairments of neck and back pain, anxiety, and depression in his RFC assessment. Tr. at 21. Other than his conclusory statement that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," he made no findings regarding the combined effects of Plaintiff's impairments.

Citing to cases from North Carolina and Virginia, the Commissioner argues that the ALJ properly considered Plaintiff's impairments in combination by summarizing his medical records as to each impairment and stating he considered them in combination. [Entry #20 at 17]. Historically, the District of South Carolina has found that the Fourth Circuit's *Walker* decision requires an explanation of the combined effect of a plaintiff's impairments and in-turn consideration of the individual impairments is insufficient. *See*

17

*Saxon*, 662 F. Supp. 2d at 479.   In *Walker*, the underlying ALJ decision included discussion of each of claimant's impairments separately, noting "the effect or noneffect of each." 889 F.2d at 49–50.  The Fourth Circuit overturned those ALJ findings because, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." *Id.*

Recently, courts in this District have been refining their interpretation of *Walker*. For example, in *Brown v. Astrue*, C/A No. 0:10-1584-RBH, 2012 WL 3716792 (D.S.C. Aug. 28, 2012), Judge Harwell held that the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments.  *Id.* at *6.  In so finding, he noted that Fourth Circuit precedent issued after *Walker* suggested that *Walker* was not meant to be used as a trap for the Commissioner.  *Id.* at *6.  Judge Harwell ultimately concluded that the Commissioner's determination of the plaintiff's RFC, which included findings regarding the severity of each of the plaintiff's impairments, demonstrated that the Commissioner considered the impairments in combination.  *Id.* at *7.  Central to this conclusion was the following statement contained in the ALJ's decision:  "After a thorough review of the evidence of the record, I find that the claimant's impairments of morbid obesity, depression and diabetic neuropathy do not have a negative effect upon the claimant's ability to perform routine movement beyond the light residual functional capacity. . . ." *Id.*

18

Similarly, in *Thornsberry v. Astrue*, C/A No. 4:08-475-HMH-TER, 2010 WL 146483 (D.S.C. Jan. 12, 2010), Judge Herlong found that "while the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments." *Id.* at *5. The ALJ's discussion of the plaintiff's ADLs incorporated the functional limitations imposed by multiple limitations. *Id.* The ALJ also noted that he was placing additional restrictions on the plaintiff's RFC "due to the combination of [the plaintiff's] severe impairments." *Id.* The court found that "[a]ny error on the part of the ALJ in failing to use explicit language [in considered the plaintiff's combined impairments] is harmless." *Id.*

While the foregoing cases suggest potential change related to the District's interpretation of *Walker*, their holdings do not save the ALJ's deficient analysis in this case. Unlike in *Brown* and *Thornsberry*, the ALJ in the present case included no findings regarding the combined effect of Plaintiff's physical and mental impairments, nor any findings *suggestive* of consideration of the combined impairments, other than the ALJ's generic declaration that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." Tr. at 18. Such a statement is insufficient under the prevailing case law. *See Walker*, 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability."); *see also Lucas v. Astrue*, C/A No. 5:10-2606-JMC-KDW, 2012 WL 265712, at *14 (D.S.C. Jan.

19

23, 2012), *aff'd*, 2012 WL 266480 ("[E]ven if such boilerplate verbiage could suffice to demonstrate the ALJ considered all of Plaintiff's impairments, it does not purport to indicate he considered all impairments in combination."). Nowhere does the ALJ discuss how and whether he considered the combined cumulative effect of these limitations and whether, together, the limitations rendered Plaintiff disabled. *See Walker*, 889 F.2d at 50 (holding ALJ must "adequately explain his or her evaluation of the combined effect of the impairments").

Because the ALJ failed to consider Plaintiff's impairments in combination, the undersigned recommends remand of this case to the ALJ for his specific consideration of Plaintiff's combined impairments. The ALJ should specifically consider the synergistic effect all impairments may have on Plaintiff's ability to work. This must be done in connection with all steps in the sequential evaluation process. By recommending further analysis of Plaintiff's impairments in combination, the undersigned does not suggest that Plaintiff's combined impairments necessitate a finding of disability.

2.     The ALJ Did Not Properly Evaluate the Opinions of Dr. Mullen[4]

Plaintiff argues the ALJ erred by giving no weight to the opinion of Dr. Mullen, her treating psychiatrist. [Entry #18 at 30–32]. Plaintiff further argues the ALJ erred by failing to consider all of Dr. Mullen's opinions and failing to provide legally-sufficient reasons for disregarding the opinions that he did consider. *Id.* at 27–30. The

---

[4] Plaintiff also challenges the ALJ's evaluation of Dr. Wadee's opinions; however, for the reasons stated in Section II.B.3., the undersigned does not specifically address the allegations related to the opinions of Dr. Wadee.

Commissioner counters that the ALJ gave good reasons for the weight he assigned Dr. Mullen's opinions and any error in failing to address all of the doctor's opinions was harmless. [Entry #20 at 11–13].

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 416.927(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. The ALJ has the discretion to give less weight to the opinion of a treating

21

physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001). In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

In August 2007, Dr. Mullen opined that Plaintiff was "unable to work—anxiety and panic make her intolerant of work." *Id.* He also completed an "attending physician's statement" stating that Plaintiff suffered from generalized anxiety disorder, panic disorder, and dysthymic disorder. Tr. at 314–15. He opined that although Plaintiff's condition had improved since the onset of her symptoms, her job exacerbated her underlying, long-standing anxiety disorder and she would never be able to return to work. *Id.*

In February 2008, Dr. Mullen authored a psychiatric review note in connection with Plaintiff's long-term disability application. Tr. at 296–97. He noted that he had been seeing Plaintiff "at irregular intervals from January 30, 1997 until the present." Tr. at 296. Dr. Mullen reported that Plaintiff had problems with anxiety and panic attacks, and noted that she repeatedly complained of difficulty working. *Id.* He noted that Plaintiff was let go from her work because her boss noticed how anxious and unfocused she was on the job. *Id.* He opined that her mental limitations included the "inability to pay attention, difficulty getting along with the students she has to supervise on the job,

22

having a hard time meeting deadlines and feelings of agoraphobia." Tr. at 297.  He stated

that Plaintiff took Xanax and Zoloft, but that they provided only partial relief.  *Id.*  He

opined that he did not "believe she [was] a candidate for the active work force due to the

level of panic and anxiety." *Id.*

In February 2009, Dr. Mullen opined that Plaintiff had depressive and bipolar

syndromes, with possible manic syndrome.   Tr. at 399.   He opined that her mental

disorders resulted in moderate restrictions of ADLs; marked difficulties in maintaining

social functioning; marked deficiencies in concentration, persistence, or pace; and three

episodes of decompensation of extended duration.  Tr. at 400.  He then assessed factors

related to the Listings 12.04 and 12.06 for affective disorders and anxiety-related

disorders.    Tr. at 401–03.    He opined that Plaintiff was markedly limited in

understanding, remembering, and carrying out detailed instructions; and was markedly or

moderately limited in several areas of sustained concentration and persistence, social

interaction, and adaptation.  Tr. at 404–06.  Specifically, Dr. Mullen found that Plaintiff

was markedly limited in her ability to perform activities within a schedule; complete a

normal workday and work week without interruptions from psychologically-based

symptoms; accept instructions and respond appropriately to criticism from supervisors;

get along with co-workers; respond appropriately to changes in the work setting; and set

realistic goals or make plans independently of others.  *Id.*

In his decision, the ALJ stated the following with respect to Dr. Mullen's

opinions:

The opinion by Dr. Mullen that the claimant meets listings 12.04 and 12.06 and his accompanying functional assessment are given no weight. (Exhibit 17F) The form is caption [sic] mental residual functional capacity assessment but the first two pages of this form are not functional limitations but rather assess the severity and listing steps of this claim. The third page of the form is the residual functional capacity. The questions posed are not functional limitations. Moreover, the characterizations of the limitations are inconsistent with Social Security Ruling 00-4p which requires that evidence is based on underlying assumption or definitions that are consistent with regulatory policies and definitions. The characterizations are not defined by the Social Security Administration or the Dictionary of Occupational Titles. Therefore no weight can be accorded to Dr. Mullen's opinion. His conclusion that the claimant meets 12.04 and 12.06 is highly questionable regarding his conclusions that the claimant has marked limitations in social functioning and attention and concentration. His conclusions are inconsistent with the psychiatric review techniques completed by state agency psychologists. Dr. Mullen's conclusions are inconsistent with Dr. Wadee's finding that the claimant's mental status was normal and that she could return to work (Exhibit 10F). The activities of daily living that she reported to Dr. Cole is starkly inconsistent with marked limitations (exhibit 5F). Similarly, the activity of daily living questionanaire completed on October 9, 2007 is inconsistent with Dr. Mullins [sic] conclusions (exhibit 1F). In making my determination that no weight should be accorded to Dr. Mullins [sic] opinions the claimant's testimony at the hearing is strikingly inconsistent with his findings. My analysis of the "B" criterion set forth herein above articulates a multitude of activities under social and attention/concentration which is inconsistent with Dr. Mullins [sic] opinion and persuades me to find that no weight should be accorded his opinion.

Tr. at 22.

Plaintiff argues that the ALJ's decision to accord no weight to Dr. Mullen's opinions is reversible error. The undersigned agrees. Social Security Ruling 96-2p provides:

Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial

evidence in the case record means only that the opinion is not entitled to "controlling weight," *not that the opinion should be rejected.* Treating source medical opinions *are still entitled to deference* and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

*Id.* (emphasis added). In *Farmer v. Astrue*, C/A No. 3:08-739-CMC, 2010 WL 500450 (D.S.C. Feb. 5, 2010), the court remanded the case after finding that the ALJ's decision to accord no weight to the treating physician's opinions directly contradicted SSR 96-2p. *Id.* at *2–3; *see also Cogdell v. Astrue*, C/A No. 8:10-105-JFA-BHH, 2010 WL 6243317, at *8 (D.S.C. Dec. 20, 2010) (finding that "a treating physician's opinion, even where it is not consistent with other substantial evidence of record, is not worthless"), *aff'd*, 2011 WL 1085120 (D.S.C. March 22, 2011). As in *Farmer*, the ALJ's failure to accord any weight to Dr. Mullen's opinions in the present case directly contradicts SSR 96-2p. Consequently, the undersigned recommends remand on that basis.

In addition to failing to accord proper weight to Dr. Mullen's opinions, the ALJ failed to address the opinions from August 2007 and February 2008. Instead, the ALJ addressed only Dr. Mullen's opinion from February 2009. The Commissioner concedes the ALJ's failure, but argues that any error is harmless because the omitted opinions merely indicate that Dr. Mullen does not believe Plaintiff can work, which is an opinion reserved to the Commissioner under 20 C.F.R. § 404.1527(d). While the undersigned agrees that Dr. Mullen's opinion that Plaintiff cannot return to work need not be addressed, his statements from August 2007 and February 2008 contain additional

opinions on issues that do not belong exclusively to the Commissioner.  Specifically, the August 2007 opinion provides that Plaintiff cannot tolerate stress and that her job exacerbated her underlying, long-standing anxiety disorder.  Tr. at 313–14.  In the February 2008 statement, Dr. Mullen opined that Plaintiff's mental limitations included the "inability to pay attention, difficulty getting along with the students she has to supervise on the job, having a hard time meeting deadlines and feelings of agoraphobia."  Tr. at 297.  He also stated that Plaintiff's medications provided only partial relief.  *Id.*  These opinions support Plaintiff's allegations and the ALJ's failure to consider them provides an independent ground for remand.  *See Masters v. Astrue*, C/A No. 3:10-2477, 2012 WL 3029634, at *4 (D.S.C. July 25, 2012) (failure to consider treating physician's opinions violates 20 C.F.R. § 404.1527(c), which requires the ALJ to evaluate every medical opinion received).

### 3.    Plaintiff's Remaining Allegations of Error

Because the undersigned recommends remand based on the ALJ's failure to consider Plaintiff's impairments in combination and his failure to properly assess Dr. Mullen's opinions, Plaintiff's remaining allegations of error are not addressed.  However, on remand, the undersigned recommends directing the ALJ to provide greater explanation for his treatment of the opinions of both Dr. Wadee and Dr. Mullen.  The undersigned further recommends directing the ALJ to assess Plaintiff's credibility in accordance with the regulations.  The undersigned notes that the recommendation of remand is in no way intended to suggest that the ALJ should award benefits on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

January 31, 2013                          Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

27

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).